Case number 19-2366, Kurt Hammond v. Oakland County, MI et al. All arguments not to exceed 15 minutes per side. Mr. Robert C. Clark for the appellant. Good afternoon, your honors. Again, Robert Clark on behalf of defendant appellants. This court's decision in Ashford earlier this year establishes that not only was the use of was not clearly established to be unreasonable at the time of the incident occurred back in December of 2016. In the Ashford case, the court began its opinion by stating that the case boiled down to a matter of perspective. From the plaintiff's perspective, it was an unprovoked attack on a cooperating suspect. And from the officer's perspective, it was the best way to gain control of the situation. In affirming summary judgment in favor of the officers, this court confirmed that the proper analysis for these types of cases was the officer's perspective. And this court explicitly stated, we must consider what was reasonable from the officer's perspective, not the suspects. Counsel, if I may, this is Judge Kethledge. I certainly understand your point. And I understand it as it applies to when the officers first encounter the plaintiff and not really when he retreats to the room and not knowing what his intentions are and so forth. I guess just to cut right to it, the concern I have about your position is after he's handcuffed. Obviously, we have to take the plaintiff's versions of the facts and his version is he's on his stomach. There's a point when he is handcuffed. And then after that point, he hears two foreign language type commands after which the dog bites him in two different places. And then one of the deputies says the dog is not doing anything but holding you. And so my question is, why was it reasonable on these facts for the officers to order the dog to be handcuffed on his stomach? Yes, Your Honor. I just have to respectfully disagree that there was ever an order to bite Mr. Hammond while he was on his stomach. Leading up to that, there had been resistance and Mr. Hammond even admitted that he was keeping his hands on his chest to cover his wound rather than giving his hands as ordered to be handcuffed. But to your point, when he was handcuffed, he admittedly was kicking his legs. And in my opinion, the undisputed testimony is that the dog then bit in response to Mr. Hammond. But doesn't he testify? I'm sorry to interrupt. He testifies very specifically that he wasn't bitten until after he was handcuffed. And so I think we have to take that. And then he says that he wasn't, that he was resisting. I think it's page ID 637. He was resisting the dog, which suggests to me that the dog was biting him and then he starts to kick the dog. So why we have to take all of that is true, don't we? Or in the light most favorable to him? With respect to his testimony about when he was bit, yeah, I would agree that you have to take it from his perspective or as if it is true. But the main point with regard to those bites and what I think the district court aired is there's no evidence that those bites were intentional. And in order to have a Fourth Amendment violation, you have to have an intentional act. And the only testimony regarding the commands that were given by the canine handler were the initial command to find and bite, which was before he was handcuffed, obviously. And then once that initial altercation and the heel. So those are the- Counsel, this is Judge Rogers. Are you saying that the district court aired in determining what there was a genuine issue of fact about? Yeah, I'm a little unclear as to what you're, what I guess- Sounds to me like you're saying the district court wrongly came to the conclusion that there was a genuine issue of fact as to whether Hammond kicked his legs or when the dog bit. Yeah, I do think the court aired in that because- Okay, well, let me ask you this then. Would you agree that we don't have jurisdiction or where it's not appropriate for us to evaluate that issue, but instead we have to take what the judge says there was a genuine issue of fact to? No, I think this jurisdiction is proper in this court because as set forth in my reply brief, if you look at plaintiff's testimony alone, his testimony alone provides for summary judgment in this case. Because again, what I was referring to earlier, the testimony is that there were two commands and that's still- Counsel, I'm talking about what we're supposed to do as a court of all the time. Your opponent cites cases like Johnson v. Jones and Romo v. Largan and Delusio, all those cases which explain that we have to take the district court's determination of what a jury could possibly find. You seem to be disregarding those cases- Your Honor, I respect the- And saying instead that we should evaluate whether the district court properly came to a conclusion as to whether there was a genuine issue of material fact, which you can argue, but you're going straight uphill, almost vertically uphill in this circuit. Your Honor, I don't think that- I think I am well within the case law cited by plaintiff because as- Then let me ask you this. Would you say that we should look at Hammond's version as described by the district court to be the To the extent that they are supported by the record- Well, that's not what the law is. The law is we have to take them regardless of whether they're supported by the record for purposes of this interlocutory appeal. Counsel, we would review the point about whether there's actually a genuine issue in a later appeal after trial. So you're stuck with the district court's view of what there was a genuine issue of fact as to- And I understand that that law is out there, but again, I keep going back to the fact that even using- Not just out there, it's the law. Yeah. I appreciate that. But even with the district court's recitation of the record, I still believe that- If we look just, and I can tell you, I can't speak for my colleagues, but I'm just going to look at what the district court said there were sufficient facts to show. And the court very nicely, sometimes they don't do it, the court very nicely laid out what facts those were. Okay. Says Hammond denies kicking his legs. He denies actively resisting prior to being bitten on the leg. He said he could hear his bones snapping in his head while a canine continued to chew on his legs. You kind of have to accept those facts. If you accept those facts, then there was no constitutional violation. Is that what you're arguing? Well, I agree that if you accept those facts, and again, we have a dispute about whether that's supported by the record. I acknowledge the case law that you're referring to. You still- You're agreeing that if we accept the facts that the district court said, it's an awkward way of speaking, but the district court said there was a genuine issue as to a body of facts. You're agreeing that if we accept those facts, then your appeal fails, at least with respect to where those facts cut against you. Again, in part, yes. But what I think you also have to consider is that there are multiple uses of force, and this court has laid out the proper framework for viewing excessive force as a segmented approach. And the district court didn't use that approach whatsoever. So it was just a conglomerate overview of the force that was used without any breakdown of when the force was used, what had happened before that. And so when I think you look at the segmented approach, there are certain acts that you can say summary judgment was improper for, especially for two of the defendants, Welch and Salyers, who there is no dispute as to the facts regarding what they did or did not do. There's no reference or mention to those defendants in the district court's opinion, other than the conclusion, I guess. Well, if the district court said there was enough for a jury to determine whether the district court was right or wrong, if the district court said there was enough for the jury to determine that he was not actively resisting prior to being bitten on the leg, that the canine continued to chew on his leg, he's heard a deputy give a command to the dog, but the dog didn't comply, and Hammond didn't kick his legs. If you accept those facts, is there a constitutional violation or not? Again, with respect to Gadot, I might agree with that. Again, with respect to the other two, what would you say? There is no evidence and the district court didn't cite any evidence that one, they acted or they had an opportunity to prevent any of the force that was being used. The record is bare, absent of any evidence to support those five minutes of rebuttal. We'll hear from the council for a police. Thank you, your honors. Steven Budai appearing on behalf of Kurt Hammond. I have to say that I agree with Judge Kethledge and Judge Rogers with regard to the questions that have been asked. I'm not sure how much more in depth I need to go. The brief that I've presented to the court, what do we do with the, there is deposition testimony from your client that he was resisting the dog. Is that right? The district court says Hammond says that he never resisted, but that's not actually correct, is it? I mean, his own testimony is that he did. I don't think that you can call it resisting when you're being bitten by a dog that's biting strong enough to break your bones that you're trying to get away from. Of course, any normal human reaction would be to try and get away from that dog that's biting you. I don't think that would be considered resisting in the sense that he's trying to get away. He was never trying to get away. He didn't try to flee. He didn't try to run away. He's in this tiny little house that's 500 square feet with three officers on top of him and two officers outside. There was no attempt by him to try and get away or flee or resist. He testified that he didn't resist. Well, he does use the word resist. I mean, he says he was resisting the dog. I mean, that may be, it may be that he was justified, although we have to segment everything that happened, right, under our jurisprudence. There's the takedown. There's the biting. There's the failure to intervene. They're all different. We have to analyze them all separately, right? Yes. Tell me a little bit about, I'm curious about the initial takedown and whether, in the Ashford case, we have some language that suggests that when everything occurs really quickly, like within a matter of seconds and not minutes, that we're not gonna really draw these fine lines. And I'm wondering if you have a response to whether that's something that happened in this case. No, I don't think that is what happened in this case. I think this case is completely distinguishable from Ashford because primarily, because in Ashford, they had videos which showed the undisputed evidence, despite what the plaintiff was claiming in that case. They had undisputed video in that case that they were able to observe to see exactly what happened. We don't have that here. They don't have anything to contest what Mr. Hammond says happened, except for their own claims of what happened. But we can't use those claims here in the lower court nor here to determine what happened. We have to look at what Mr. Hammond says happened. Bottom line is that he opened the door, he unlocked the door. The officers had been attempting to break the door down, but were unable to do so. He then went, opened the door. He was bleeding. Don't forget he'd been stabbed in the chest. He had been hit in the head with a coffee mug. He was disoriented and he testified that there was blood gushing out of his chest. His main concern at that point was stopping the bleeding. He went to take care of that bleeding. And I have to say, if you've looked at the pictures of the house, it's a little teeny tiny house. You walk in the front door, you can see everything in that house. There's not even a door between the bedroom and the bedroom. So when they say, you know, he was hiding behind the door or whatever they claim, it's not true. And he came out, he came out of the front. All they had to do was ask him what happened. Instead of pouncing on him at that point, three large officers pounced on this five foot eight inch guy and all three jumped on him. And then they're handcuffing him and he gets the command to bite him. So he starts, the dog starts biting him on the back. There's a second command. Council, on that point, where in the record does it show that these commands, these foreign language commands were commands to bite? Well, we know that the command from their training and the testimony of the officers, of Officer Cadat, that the command that they give is find and bite. That is their command. It's not locate and hold. It's their command based on their training is find and bite. But they also have a command to heal or stop biting, I gather. Well, I assume that they do. So how do we know this was not a heal, you know, stop biting command? Because the dog kept biting. Well, maybe, you know, the dog, you know, is a, the dog may not be doing what it's told to do is one of its first outings, if I recall. This was its first outing in an actual bite situation outside of training. And that also goes to the lack of training of the dog. We know from the testimony of Officer Cadat that during its training, this dog liked to bite things, regardless of the fact that the handler would call him off. In fact, when I asked the officer at the deposition, why does he do that? And he said, because that's what this dog likes to do. And so, you know, regardless of the fact that he, whether he said bite him or heal, we don't know. He's using foreign languages. So we have no idea exactly what the officer is telling him. We do know that the dog bit, that it bit him on the side, and then it released his side. Then when there was a second command, it bit on his leg and foot. And the dog was so out of control that even bit Deputy Cadat on the leg. That's the question, Counsel. Cadat is the handler of the dog, is that correct? Yes. I don't want to put words in your opponent's mouth, but I took him almost to agree that with respect to Officer Cadat, if you're bound by the Hammond's version, that there's a problem with summary judgment for him, but he distinguishes the other two officers. What is their to show that the other officers exerted excessive force? Well, first of all, I think that the, there was no need at any point to have three officers and a dog pouncing on my client. Secondly, I think- Well, no need is different from excessive force. But I think there's also a failure to intervene. These officers stood idly by, Mr. Hammond testified, and I'll quote him. Do you argue this in your brief? Pardon me? Do you argue this in your brief? I'm sure that I did. I can try and look at it very quickly. Be helpful. I mean, I took the focus to be on the dog, which makes sense. It's the strongest part of your case. Yeah, there's no question. We have to rule on all three. And if there's just not much there on the others. Right. Well, what I can- Then maybe qualified immunity is appropriate with respect to the others. That's my question. If you don't really argue it. With regard to the other two, Mr. Hammond testified as follows. The dog is biting. I could hear my bones crackling in my head. I felt the vibrations in my head. I'm hearing literally my bones snapping in my head. I knew in my head- The dog listens to Cudat though, right? Right. But then he kept screaming, get him off of me, get him off of me, get him off of me. They wouldn't get him off of me. They stood by and let the dog do what it wanted to do. They didn't do anything to remove the dog from me. They stood and watched like they was enjoying it, end quote. And that is on page 72 of Mr. Hammond's deposition. Salyers and Welch also testified that they don't get involved when there's a dog because they don't want to get bit and it's not their job. Now, this dog had a handle type collar on it that any one of them could have grabbed to pull the dog off of Mr. Hammond. And in fact, Cudat used that handle to pull the dog off of Mr. Hammond when the dog was going out of control and wouldn't- Did the district court rely on any of that? I'll have to go back and look at the district court's ruling as to Salyers and Welch. It's on page 12, I think. I was just trying to locate that. Thank you. I guess it did. At least quickly it did on page 12, I suppose. That's correct. Thank you. I didn't mean to interrupt too much. I was just trying to figure out what's presented. That's okay. So as to distinguishing, I think I was talking about Ashford and saying that it's distinguishable since- Is there any, Counselor, as you know, the law has to be clearly established. Is there any clearly established law or cases from our circuit on failing to intervene in this kind of situation where you're not the dog handler, but you're there? Have we held anything like that? I'm not sure that there's a specific one having to do with a dog, but I think it's pretty fairly clear that they have a duty to intervene when there's excessive force being used. And whether it's a dog or whether- The dog is considered a police officer. That is conceded by the defendants. The dog is a police officer. So if the dog is a police officer, then they have a duty to intervene just like they do if it was another officer committing the excessive force. So the dog biting his back, biting his side, biting his leg, biting his foot, breaking bones in his body is certainly excessive force given that he was just one little guy against these three gigantic officers who were on top of him and had him handcuffed. Well, it sounds like there isn't any clear, any authority that would make clear to an officer who isn't the dog handler that the non-dog handler officer has a duty to take control of the dog situation. Am I mistaken somehow on that? I don't think you're mistaken on that, but I do, as I just said, believe that they have the same obligation with a dog that they have with another officer. It's the same. The dog is equipped with a handle. The dog was unleashed, by the way, in case you forgot that. The dog was completely unleashed. This dog was just on its own, but had a handle on its collar that Kadat did use at the end to pull the dog off because it was not releasing despite whatever command he's giving or attempting to give to the dog. He used that handle. It was just as available to the other officers to pull that dog off as it was to Kadat. I don't know if anyone wants me to get into the municipal claims. I've got a couple of minutes left. Sure. As far as the municipality is concerned, it's our position that the policies of the county were deficient, that the ability to failure to train the handler and the failure to train its dogs is a result of the poor policies that the county had in effect at that time. They had a use of force policy that did not mention anything about the use of dogs in the course of an arrest. They had a canine policy that did not mention anything about force in its policy. Taken together, the two policies completely left it to the discretion of a handler as to how to handle a dog situation when the dog was used in an arrest. They did not give any direction in any way to the handler on how to handle the dog and the failure of this dog, particularly in this case, to be trained appropriately is a failure of the county to have the appropriate policies in effect. I must say I'm having trouble seeing how we have jurisdiction at this point over that kind of an issue. Well, I know that there's this intertwinement doctrine, but it doesn't seem to apply when the whole argument, or almost all of it, as you've just expressed it, has to do with the content of the regulations. Usually when we see something that's intertwined, the idea is there's no violation by the city. If there's been no violation by the individual defendant, and since one fails, the other fails as well, there's no sense to sending it back, whereas the way you're describing it, it seems like a pretty different inquiry, especially if we take the position that at least with respect to one of these defendants, there may not have been a violation. And I agree with you because I pointed that out in my brief that I did not believe that the questions as to the municipal liability claim was inextricably intertwined with the primary claim. I did point that out. We should leave that out then as your ultimate position. You're just arguing it in case we reach it. Is that right? That's correct. Thank you for the clarity. Great. My time is up. Thank you. We'll hear rebuttal and perhaps, Mr. Clark, you can address that last point because it seems like it may be a question for you in terms of whether we should even look at the Monell question if the claim against Mr. Officer could not go forward. Yeah, I'll concede that. I understand the case law and if all the claims went away, I do believe they're intertwined. If they don't, the case law is clear that this court just doesn't have jurisdiction at this stage to rule on that. But I do want to clarify one of my prior answers specifically to Judge Rogers' questions about Kadat. Kind of piggybacking off of your question, Judge Nalbanian, if you look at this segmented approach, I think the Judicial Court's analysis would only apply to the bites that occurred after he was handcuffed. And you do have some allegations regarding force that I do think this court can decide and reverse that occurred before that, specifically the takedown. I think even with the undisputed facts and the facts as set forth by plaintiff, that initial takedown was reasonable. You had plaintiff open the front door, retreat to an area where the officers had no idea what he was doing, what was going on in that bedroom. And that initial takedown, right when he came out of the bedroom was reasonable. If it wasn't reasonable, there's no case law that says you couldn't do it. So they should be entitled to qualified immunity on that. And along similar lines during that takedown is when the undisputed evidence is that the initial bite on Mr. Hammond's back occurred. And so I think- I think, let me ask you about that because I don't think that's true. I think he says that he testifies pretty clearly that he was bitten only after he was handcuffed. And so I take it under Ashford, if the dog, if he had been bitten while they were taking him down and let's say struggling with him, but under Ashford, the whole 30 seconds or whatever it is would all be kind of the same event and it might be okay under Ashford. But this case seems slightly different because I don't think there's, I think the plaintiff clearly testifies, doesn't he? I was bitten after I was handcuffed. So that's after the takedown, isn't it? That's on his leg and foot. The back was, he said, he jumped up and bit me as I was being taken down. Where does he say that? I don't have a specific page and I don't have the deposition in front of me, but that's my recollection of what he testified. I took his deposition. And so that in my position is that takedown and that bite at that point, that would have all been reasonable because to your point, that's an Ashford case. That's what this court in Ashford said was reasonable. And so if you use the segmented approach, those two uses of force, even with the plaintiff's version or the facts that are set forth by the district court, both of those uses of force would be reasonable. And we can distinguish between those uses of force and what occurred after he was handcuffed, if there's use of force after that. And then the only other point I have is for the other officers, I just went through plaintiff's brief again. There's not a single reference to those arguments or claims. And my position is that the case law is clear that those claims have been abandoned. Any claim addressed for the first time today should not be considered because they weren't thoroughly briefed or properly briefed. And even if they were, there's no case law that says an officer that has no training whatsoever in canine handling, when to pull off a dog, when to deploy a dog, anything like that. Should pull off a dog if he feels like a dog, in his opinion, is acting improperly. And so therefore, I think those two claims are subject to qualify. I mean, does the appellee have the same obligation to raise an argument as an appellant does though? I mean, he prevailed below on the failure to intervene and you raise the argument in your brief, but maybe he thought that you just didn't carry the day and it wasn't worth spending the time. I'm not sure the appellee has the same obligation, does he? I believe he does have an obligation to address it in his brief. A failure to address any argument constitutes as a waiver. And if you don't have any response, then I do think that you haven't satisfied your burden. And for that reason, I think it has been abandoned. But again, even if it has, I still think I win on that issue for Salyers and Welch. There is no case law in this circuit or any other circuit that's been cited. Again, plaintiff has the burden to show that Salyers and Welch are not entitled to qualified immunity. And without addressing the issue at all, I don't see how you can satisfy that burden. See my time's up. I really appreciate it. Well, great. Thank you both for your arguments and the court will issue an opinion in due course. Thank you very much. Thank you, your honors.